**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MICHAEL J. PYLE and CANDY PYLE,

              Plaintiffs,

        v.

THE NATIONAL FOOTBALL LEAGUE,
NFL PROPERTIES, LLC,

              Defendants.

Case No. 12-cv-6493

ECF Case

Judge Katherine B. Forrest

---

**MEMORANDUM OF LAW OF DEFENDANTS**
**NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC**
**IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND,**
**FOR PRESERVATION OF DISCOVERY,**
**AND FOR DISCOVERY IN AID OF REMAND**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT .......................................................................... 1

STATEMENT OF FACTS .................................................................................. 5

ARGUMENT ...................................................................................................... 8

I.      REMOVAL OF PLAINTIFFS' CLAIMS IS PROPER ........................................ 8

   A.    Section 301 of the LMRA Preempts Plaintiffs' Claims.......................... 9

      1.    Resolution of Plaintiffs' Negligence-Based Claims Requires Interpretation of
            the Terms of the CBA ................................................................. 10

      2.    Resolution of Plaintiffs' Fraud-Based Claims Requires Interpretation of the
            Terms of the CBAs ..................................................................... 15

      3.    Plaintiffs' Claims Against the NFL Arise Under the CBAs .......................... 19

   B.    The 1968 Constitution Is Incorporated Into the CBA.......................... 21

II.     PLAINTIFFS' REQUESTS FOR DISCOVERY SHOULD BE DENIED.......... 23

CONCLUSION.................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allied Chem. & Alkali Workers of Am., Local Union No. 1* v. *Pittsburgh Plate Glass Co.*,
  404 U.S. 157 (1971) .................................................................................18

*Allis-Chalmers Corp.* v. *Lueck*,
  471 U.S. 202 (1985) .............................................................9, 19, 21, 22

*Atwater* v. *Nat'l Football League Players' Ass'n*,
  626 F.3d 1170 (11th Cir. 2010) .........................................13, 16, 17, 18, 19

*Bentley* v. *Cleveland Browns Football Co.*,
  958 N.E.2d 585 (Ohio Ct. App. 2011) ..........................................................14

*Brown* v. *Nat'l Football League*,
  219 F. Supp. 2d 372 (S.D.N.Y. 2002)..............................................20, 21, 22

*Caronia* v. *Philip Morris USA, Inc.*,
  No. 06-CV-224, 2011 WL 338425 (E.D.N.Y. Jan. 13, 2011) ....................................10

*Clarett* v. *Nat'l Football League*,
  369 F.3d 124 (2d Cir. 2004)..............................................................22, 23

*Clarke* v. *City of New York*,
  82 A.D.3d 1143 (N.Y. App. Div. 2011) ........................................................8

*Duerson* v. *Nat'l Football League*,
  No. 12 C 2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012) ............................. passim

*In re Fosamax Prods. Liab. Litig.*,
  248 F.R.D. 389 (S.D.N.Y. 2008) ...............................................................10

*Foy* v. *Pratt & Whitney Group*,
  127 F.3d 229 (2d Cir. 1997)....................................................................15

*Givens* v. *Tenn. Football, Inc.*,
  684 F. Supp. 2d 985 (M.D. Tenn. 2010).........................................................12

*Hamilton* v. *Beretta U.S.A. Corp.*,
  96 N.Y.2d 222 (N.Y. 2001) .....................................................................10

*Hendy* v. *Losse,*
  No. 89-55430, 1991 U.S. App. LEXIS 2141 (9th Cir. Feb. 12, 1991) .......................21

*Holmes* v. *Nat'l Football League,*
  939 F. Supp. 517 (N.D. Tex. 1996) ............................................................................13

*Hughes* v. *BCI Int'l Holdings, Inc.,*
  452 F. Supp. 2d 290 (S.D.N.Y. 2006) ........................................................................10

*Int'l Bhd. of Elec. Workers* v. *Hechler,*
  481 U.S. 851 (1987) ......................................................................................................9

*Jeffers* v. *D'Alessandro,*
  681 S.E.2d 405 (N.C. Ct. App. 2009) ........................................................................13

*Johnson* v. *NBC Universal, Inc.,*
  No. 08-cv-03780, 2009 WL 151673 (D.N.J. Jan. 22, 2009)........................................22

*Jurevicius* v. *Cleveland Browns Football Co.,*
  No. 09-cv-1803, 2010 WL 8461220 (N.D. Ohio Mar. 31, 2010)..........................14, 15

*Levy* v. *Verizon Info. Servs.,*
  498 F. Supp. 2d 586 (E.D.N.Y. 2007) ......................................................21, 22, 23, 24

*Major, Lindsey & Africa, LLC* v. *Mahn,*
  No. 10 Civ. 4239, 2010 U.S. Dist. LEXIS 94033 (S.D.N.Y. Sept. 7, 2010) ..............24

*Maldonado* v. *Pataki,*
  No. 05-CV-5158, 2005 U.S. Dist. LEXIS 36924 (E.D.N.Y. Dec. 7, 2005) ...............25

*Mandarin Trading Ltd.* v. *Wildenstein,*
  16 N.Y.3d 173 (N.Y. 2011) ........................................................................................15

*Manti's Transp., Inc.* v. *C.T. Lines, Inc.,*
  68 A.D.3d 937 (N.Y. App. Div. 2009) .......................................................................15

*Maxwell* v. *Nat'l Football League,*
  No. 11-CV-08394, Order (C.D. Cal. Dec. 8, 2011)............................................ passim

*Montefiore Med. Ctr.* v. *Teamsters Local 272,*
  642 F.3d 321 (2d Cir. 2011)..........................................................................................9

*Salamea* v. *Macy's East, Inc.,*
  426 F. Supp. 2d 149 (S.D.N.Y. 2006).........................................................................19

*Schweizer Aircraft Corp.* v. *Local 1752, Int'l Union*, United Auto., Aerospace &
   *Agric. Implement Workers of Am.*,
   29 F.3d 83 (2d Cir. 1994) ............................................................................18

*Sherwin* v. *Indianapolis Colts, Inc.*,
   752 F. Supp. 1172 (N.D.N.Y. 1990) ........................................8, 13, 17, 20

*Smith* v. *Houston Oilers, Inc.*,
   87 F.3d 717 (5th Cir. 1996) ........................................................................13

*Stringer* v. *Nat'l Football League*,
   474 F. Supp. 2d 894 (S.D. Ohio 2007) ..........................................12, 14, 20

*Thomas H. Lee Equity Fund V, L.P.* v. *Grant Thornton LLP*,
   586 F. Supp. 2d 119 (S.D.N.Y. 2008) .........................................................16

*Trans Wax Corp.* v. *McCandless*,
   50 F.3d 217 (3d Cir. 1995) ..........................................................................15

*United Steelworkers of Am.* v. *Rawson*,
   495 U.S. 362 (1990) .................................................................................9, 20

*Vera* v. *Saks & Co.*,
   335 F.3d 109 (2d Cir. 2003) ..........................................................................9

*Voilas* v. *Gen. Motors Corp.*,
   170 F.3d 367 (3d Cir. 1999) ........................................................................15

*Williams* v. *Nat'l Football League*,
   582 F.3d 863 (8th Cir. 2009) ................................................................13, 16

*Wynn* v. *AC Rochester*,
   273 F.3d 153 (2d Cir. 2001) ........................................................................15

*Yurman Designs, Inc.* v. *A.R. Morris Jewelers, LLC*,
   41 F. Supp. 2d 453 (S.D.N.Y. 1999) ...........................................................25

**STATUTES**

28 U.S.C. § 1331 ....................................................................................................4

28 U.S.C. § 1367 ....................................................................................................4

28 U.S.C. § 1441 ....................................................................................................4

29 U.S.C. § 185 ............................................................................................. passim

Defendants National Football League ("NFL") and NFL Properties LLC ("NFLP," and, together with the NFL, the "NFL Defendants") respectfully submit this memorandum in opposition to Plaintiffs' motion to remand, for preservation of discovery, and for discovery in aid of remand.

## PRELIMINARY STATEMENT

Plaintiffs' motion to remand should be denied because Plaintiffs' claims— contending that the NFL Defendants failed to fulfill a duty to ensure the safety of NFL players— are preempted by federal labor law. Thus, this Court has federal subject matter jurisdiction over them, and removal is proper, as two district courts have recently found. *See, e.g.*, *Duerson* v. *Nat'l Football League*, No. 12 C 2513, 2012 WL 1658353, at *6 (N.D. Ill. May 11, 2012) (denying motion to remand because plaintiff's negligence claim based on alleged head injuries sustained while playing in the NFL was preempted); *Maxwell* v. *Nat'l Football League*, No. 11-CV-08394, Order at 1-2 (ECF No. 58) (C.D. Cal. Dec. 8, 2011) (same).

Plaintiff Michael J. Pyle—suing here with his wife, Plaintiff Candy Pyle—is a former professional football player who played in the NFL from 1961 through 1969, and thus played NFL football pursuant to the terms of the 1968 Collective Bargaining Agreement (the "CBA") and the accompanying NFL Constitution and Bylaws (the "Constitution"). The 1968 CBA, like later CBAs, is a labor agreement that details and comprehensively governs the relationship among the NFL, its Clubs, and the players. That relationship is also governed by the terms of the 1968 Constitution, to which the Union, through the CBA, agreed to be bound. Among other provisions in the CBA and the Constitution, the Constitution provides that the Clubs are responsible for providing medical care to players.

The 1968 CBA—like all collective bargaining agreements affecting interstate commerce—is governed by section 301 of the Labor Management Relations Act ("LMRA"). Section 301 is intended to ensure that labor disputes are resolved under a uniform body of federal labor law and adjudicated in accordance with the grievance procedures set forth in collective bargaining agreements. For this reason, section 301 completely preempts all state law claims—including tort claims—the resolution of which is substantially dependent on an interpretation of the terms of a collective bargaining agreement, or that arise under such an agreement.

That is the case here. Plaintiffs allege that the NFL breached its duties to inform NFL players of the risks associated with concussions and to provide safety regulations governing the health and safety of those same players. To resolve Plaintiffs' claims, the Court would be required to interpret the 1968 CBA and Constitution to determine whether the NFL had such duties, the scope of any such duties, and the reasonableness of the NFL's conduct. Thus, because the resolution of Plaintiffs' claims substantially depends upon an interpretation of this provision, among others, Plaintiffs' claims are preempted, and removal was therefore proper. Each of Plaintiffs' arguments in support of remand is without merit.

First, Plaintiffs argue that their tort claims are pled as violations of state law and thus are independent of the CBA and not preempted. Contrary to Plaintiffs' argument, however, preemption applies even though Plaintiffs allege common law tort claims, because resolution of those claims substantially depends upon an analysis of the terms of a collective bargaining agreement, as other courts have held. For example, in *Duerson*, the court held that a concussion-related negligence claim against the NFL similar to that alleged here was preempted because, in order to evaluate the reasonableness of the NFL's conduct, the court would be required to interpret the terms of the CBA setting forth the duties of the NFL clubs to protect player health

and safety.  2012 WL 1658353, at *4, 6.  In finding the plaintiff's claim preempted, the court in *Duerson* explicitly rejected the argument that Plaintiffs make here—that there is no preemption because the claims are pled as state-law tort claims—explaining that "[e]ven if the NFL's duty arises apart from the CBAs . . . the necessity of interpreting the CBAs to determine the standard of care still leads to preemption."  *Id.* at *4; *see also Maxwell*, No. 11cv-08394, Order at 1-2.

Although the relevant provision of the 1968 Constitution differs from the provisions on player health and safety in the CBAs analyzed by the *Duerson* and *Maxwell* courts, its substance is the same:  the 1968 Constitution, like the later CBAs, places on the Clubs the responsibility to provide medical care to NFL players by requiring the Clubs to "provide a physician and an ambulance at each game."  Thus, in order to determine the scope of the NFL's alleged duties, if any, to Pyle and whether the NFL acted reasonably in carrying out those duties, a court would be required to interpret this provision to determine precisely what the Clubs and their physicians were obligated to do.  The 1968 Constitution's provision on player health and safety likewise is integral to the resolution of Plaintiffs' fraud-based claims.  These claims, too, rest upon the breach of the NFL's alleged "duty to advise Mike Pyle of the heightened risk" of neurodegenerative diseases—a duty that cannot be measured without first considering the obligations regarding player health and safety set forth in the Constitution.  Nor can a court determine whether Plaintiffs justifiably relied on information provided by the NFL without first interpreting this provision placing on the Clubs the responsibility for providing a physician for the treatment of player injuries.

Plaintiffs' claims against the NFL are preempted for an additional reason:  they rest on purported obligations that arise under the 1968 CBA and Constitution.  The crux of the Complaint is that the NFL had a "duty to provide players with rules and information" to protect

them from the risks of concussions sustained while playing football (Compl. ¶ 6), yet failed to "impose safety regulations governing this health and safety problem" (*id*. ¶ 9), or "delayed implementing changes to the game." (*Id*. ¶ 282.)  The 1968 Constitution, however, expressly delineates the obligations of the NFL with respect to the promulgation and enforcement of health and safety-related rules for NFL players, and any such obligations therefore arise under the CBA and Constitution.

As for the sole substantive "claim" against NFLP for "Civil Conspiracy/Fraudulent Concealment"—which lacks a single substantive factual allegation specific to NFLP—it, too, is preempted, because measuring NFLP's alleged duty also requires an interpretation of the CBAs' player health and safety provisions.

Second, Plaintiffs attempt to avoid preemption by arguing that the 1968 Constitution is not "incorporated by reference" by the 1968 CBA because the 1968 CBA lacks that specific language.  Contrary to Plaintiffs' argument, however, whether or not the 1968 CBA uses the terms "incorporated by reference" is irrelevant; as part of the collective bargaining process memorialized in the 1968 CBA, the Union agreed to abide by the terms of the 1968 Constitution to the extent that those terms did not conflict with the terms of the CBA.  Thus, the 1968 Constitution is incorporated into the 1968 CBA, and, under settled law, forms a basis for preemption.

Accordingly, because Plaintiffs' claims are completely preempted, removal is proper under 28 U.S.C. §§ 1331 and 1441.  To the extent any claim is not preempted, it is properly before this Court pursuant to the Court's supplemental jurisdiction under 28 U.S.C. § 1367.  Plaintiffs' motion to remand therefore should be denied.

Finally, this Court should deny Plaintiffs' pleas for discovery.  It is well established that in order to determine whether Plaintiffs' claims are preempted, the Court need consider only the applicable collective bargaining agreement—here, the 1968 CBA and Constitution—and the Complaint.  As for Plaintiffs' request for preservation discovery, the question of the appropriateness of such discovery can and should be addressed by one of two courts—either the transferee court, which already is addressing similar issues and which the NFL Defendants contend should hear this motion, or the state court, should Plaintiffs' remand motion ultimately prevail.

Accordingly, and for the reasons described below, Plaintiffs' motion to remand, for preservation of discovery, and for discovery in aid of remand should be denied.

## STATEMENT OF FACTS

The NFL is an unincorporated association of 32 Clubs that promotes, organizes, and regulates the sport of professional football in the United States.  (*See* Compl. ¶ 34.)  NFLP "serves as the representative of the [NFL and its Clubs] for the licensing of their trademarks and logos." (www.nfl.info/NFLConsProd/Welcome/cpAgreement.htm.)  Plaintiff Michael J. Pyle is a former professional football player, who played in the NFL from 1961 through 1969.  (Compl. ¶ 30.)  Plaintiff Candy Pyle is his spouse.  (*Id*. ¶ 27.)

The relationship between the NFL Defendants and Mr. Pyle is defined by the 1968 CBA, which was operative during a portion of his career.  The CBA was the product of exhaustive arms'-length negotiations between, on the one hand, the NFL, and, on the other hand, the NFLPA (the exclusive bargaining representative of NFL players).  The CBA so negotiated thus "represent[s] a complete full and final understanding on all bargainable subjects of negotiation among the parties[.]"  (*See* Curran Decl. Ex. ("Ex.") 1, 1968 CBA Art. I, § 2.)  Through their Union, the players further agreed to be bound by the terms of the NFL

Constitution, to the extent such terms do not conflict with the terms of the CBA.  (*See, e.g.*, Ex. 1, 1968 CBA Art. III, § 1) ("The provisions of the Constitution . . . shall remain in full force and effect . . . .  However, to the extent that [the Constitution is] inconsistent with this Agreement, the provisions of this Agreement shall govern.").

The CBA and Constitution provide that the NFL's Clubs and their medical staff bear the responsibility for treating player injuries.  Thus, the Constitution provides that "[t]he home team shall provide a physician and an ambulance at each game available to both teams; said ambulance facilities shall be located at or adjacent to the stadium, with the driver in attendance in the ambulance for the use of both competing teams."  (*See* Ex. 2, 1968 Constitution Art. XIX § 19.5.)

The CBA and Constitution also delineate the manner in which rules, including rules concerning player safety, are promulgated and enforced.  For example, the Constitution provides that the NFL and its Clubs have the obligation to "amend[] or change[]" the NFL "[p]laying rules."  (*See* Ex. 2, 1968 Constitution Art. XI, § 11.2.)

The 1968 CBA and later CBAs addressing certain retiree benefits relevant here also set forth the rights of players and former players to compensation and benefits in the event of injuries, including the right to workers' compensation, supplemental disability benefits, and termination pay, as well as certain rights and benefits for eligible retirees, including the establishment of a plan to provide medical benefits to eligible retirees determined to have dementia.  (*See* Ex. 1, 1968 CBA Art. VI; Art. XI, § 4; Ex. 4, 2006 CBA Art. XLVIII-D; *see also* Ex. 5, 2011 CBA Art. 58 § 1; Art. 65 § 1.)

Finally, the 1968 CBA contains a broad grievance procedure providing that all disputes involving "the interpretation or application of any provision of this governing

Agreement or the Standard Player Contract" will be resolved by a dispute resolution procedure that required the NFL Commissioner to resolve non-injury grievances. (Ex. 1, 1968 CBA Art. IX.) Procedures for injury grievances are also defined. (*Id.* Art. IX, § 3.)

Plaintiffs' Complaint alleges that the NFL had a "duty to provide players with rules and information to protect the players as much as possible from short-term and long-term health risks" of repetitive traumatic brain injuries, a duty "to take all reasonable steps necessary to ensure the safety of players," including a "need to promulgate return-to-play rules that specifically addressed subconcussive and concussive events," and a "duty to advise Mike Pyle" that "the repeated traumatic head impacts sustained by Mike Pyle while playing NFL football were likely to expose him of excess risk to neurodegenerative disorders." (Compl. ¶¶ 6, 85, 243, 323.) Plaintiffs allege that the NFL breached its purported duties by failing "to inform NFL players of the risks associated with MTBI [mild traumatic brain injury]" (*id.* ¶ 8), and failing "to warn and/or impose safety regulations governing this well-recognized health and safety problem." (*Id.* ¶ 9.) Generally, Plaintiffs accuse the NFL of failing "to exercise reasonable care." (*Id.* ¶ 332.)

Plaintiffs also allege that the NFL misled Plaintiffs and "willfully and intentionally concealed from" them the "heightened risk" of neurodegenerative disorders (Compl. ¶ 243), and "concealed from then-current NFL players, including Mike Pyle, the risks of head injuries in NFL games and practices, including the risks associated with returning to physical activity too soon after sustaining a sub-concussive or concussive injury." (*Id.* ¶ 265.) Plaintiffs further claim that, "[b]efore June of 2010, the NFL made material misrepresentations to its players, former players, the United States Congress, and the public at large that there was

no scientifically proven link between repetitive traumatic head impacts and later-in-life cognitive/brain injury, including CTE and its related symptoms." (*Id.* ¶ 308.)

Finally, Plaintiffs contend that the NFL negligently hired and retained unqualified persons for a Mild Traumatic Brain Injury Committee ("MTBI Committee") and allowed the MTBI Committee members "to mislead the Plaintiff" regarding "the permanent brain injury risks associated with repetitive head impacts in the game of football" (*Id.* ¶ 348), and, somehow, along with NFLP (the NFL's licensing agent), acted "in concert to conceal from NFL players and the public the link between repetitive MTBI and long-term neuro-cognitive damage, illness, and decline." (*Id.* ¶ 351.)

Plaintiff Michael Pyle purports to assert claims against the NFL for negligence, medical monitoring, fraudulent concealment, fraud, negligent misrepresentation, negligent hiring, negligent retention, and declaratory relief, and, against NFL and NFLP, a claim for "civil conspiracy/fraudulent concealment." Plaintiff Candy Pyle purports to assert against the NFL a derivative loss of consortium claim.[1] Plaintiffs seek declaratory relief, "an injunction and/or other equitable relief against the NFL and in favor of Plaintiff Mike Pyle for the requested medical monitoring;" and compensatory and punitive damages. (*Id.*, Prayer for Relief.)

## ARGUMENT

### I.

### REMOVAL OF PLAINTIFFS' CLAIMS IS PROPER

In support of remand, Plaintiffs advance two arguments: (1) that their claims are pled as state-law claims, with no mention of the CBA, and therefore are not preempted; and (2)

---

[1] *See Clarke* v. *City of New York*, 82 A.D.3d 1143, 1144 (N.Y. App. Div. 2011) (loss of consortium claim is derivative of underlying claims); *cf. Sherwin* v. *Indianapolis Colts, Inc.*, 752 F. Supp. 1172, 1179 (N.D.N.Y. 1990) (staying loss of consortium claim pending arbitration of underlying preempted claims). For ease of reference, the NFL Defendants refer to both Plaintiffs throughout this Opposition.

that the 1968 CBA does not incorporate the provision of the 1968 Constitution addressing player health and safety because "there is no language in the 1968 [CBA] that adopts or incorporates the Constitution." (Pls. Br. at 11.) For the reasons set forth below, neither argument has merit.

     **A.**     <u>Section 301 of the LMRA Preempts Plaintiffs' Claims</u>

     It is a fundamental tenet of labor law that "'when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract,' the plaintiff's claim is pre-empted by § 301 of the Labor Management Relations Act." *Int'l Bhd. of Elec. Workers* v. *Hechler*, 481 U.S. 851, 852-53 (1987) (quoting *Allis-Chalmers Corp.* v. *Lueck*, 471 U.S. 202, 220 (1985)). Thus, section 301 of the LMRA preempts all state law claims—including tort claims—the resolution of which is substantially dependent upon or inextricably intertwined with an interpretation of the terms of a collective bargaining agreement, or that arise under a collective bargaining agreement. *See* 29 U.S.C. § 185(a) (codifying section 301(a)); *Allis-Chalmers Corp.*, 471 U.S. at 213, 220; *United Steelworkers of Am.* v. *Rawson*, 495 U.S. 362, 368 (1990); *Vera* v. *Saks & Co.*, 335 F.3d 109, 114-15 (2d Cir. 2003); *see also Duerson*, 2012 WL 1658353, at *4 (even if plaintiff "can establish the existence of the NFL's duty to keep NFL players reasonably safe without reference to the CBAs, . . . the necessity of interpreting the CBAs to determine the standard of care still leads to preemption"). Accordingly, if the resolution of any one of Plaintiffs' claims substantially depends on an interpretation of the terms of, or a claim arises under, the CBA, federal subject matter jurisdiction exists, and removal was proper. *See, e.g.*, *Duerson*, 2012 WL 1658323, at *6. Moreover, "[a]s long as at least one federal claim is present, this Court can exercise supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367." *Maxwell*, No. 11-CV-08394, Order at 2; *see also Montefiore Med. Ctr.* v. *Teamsters Local 272*, 642 F.3d 321, 332-33 (2d Cir. 2011) (same).

Here, the resolution of Plaintiffs' claims—whether based on negligence or fraud—substantially depends upon an interpretation of health and safety provision in the 1968 CBA and Constitution, and thus those claims are preempted.  This is so notwithstanding that Pyle played part of his NFL career before the 1968 CBA was signed, because the 1968 CBA was "in effect during at least some of the events alleged in the complaint."  *See Duerson*, 2012 WL 1658353, at *3 ("[I]t would be exceedingly implausible to contend that [Duerson's alleged injury] was caused only by trauma suffered from 1987 through early 1993, and not by trauma from 1983 to 1986 or later in 1993.  Any attempt to exclude trauma suffered on certain dates from the claim would thus likely fail.").

### 1.    Resolution of Plaintiffs' Negligence-Based Claims Requires Interpretation of the Terms of the CBA

Plaintiffs' claims for negligence, medical monitoring, and negligent misrepresentation[2]—each of which is premised on a purported "duty to provide players with rules and information that protect them as much as possible from [the] short-term and long-term health risks" of "sub-concussive and concussive injuries in football" (Compl. ¶¶ 5-6; *see also id.* ¶¶ 85, 93)—are preempted because determining whether the NFL in fact owed a duty to Pyle, assessing the scope of any such duty, and deciding whether the NFL breached its purported duty substantially depends upon an interpretation of the health and safety provisions in the Constitution that place primary responsibility on the Clubs for the conduct complained of here.

---

[2]    "The threshold question in any negligence action is: does the defendant owe a legally recognized duty of care to plaintiff?"  *Hamilton* v. *Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232 (N.Y. 2001); *Duerson*, 2012 WL 1658353, at *3.  "Negligence," in turn, is an element of the medical monitoring and negligent misrepresentation.  *See In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 399 (S.D.N.Y. 2008); *Caronia* v. *Philip Morris USA, Inc.*, No. 06-CV-224, 2011 WL 338425, at *6 (E.D.N.Y. Jan. 13, 2011); *Hughes* v. *BCI Int'l Holdings, Inc.*, 452 F. Supp. 2d 290, 303 (S.D.N.Y. 2006).  In discussing the negligence elements, the NFL cites primarily to the substantive law of New York, the forum, and where, according to Plaintiffs, "all NFL policies and decisions relevant to the conduct alleged herein [primarily] occurred."  (Compl. ¶ 24.)  By citing to such law here, however, the NFL does not at this time concede applicability of any particular jurisdiction's laws, on any issue.

First, regarding the NFL's alleged "duty to advise Mike Pyle" that "the repeated traumatic head impacts sustained by Mike Pyle while playing NFL football were likely to expose him to excess risk to neurodegenerative disorders," and its alleged failure "to warn NFL players, including the Plaintiff Mike Pyle, of the medical risks associated with repetitive head impacts during NFL games and practices" (Compl. ¶¶ 96, 243; *see also id.* at ¶¶ 8, 265), the 1968 CBA and Constitution place responsibility on the Clubs to provide medical care to NFL players by requiring the Clubs to "provide a physician and an ambulance at each game." (Ex. 2, 1968 Constitution Art. XIX § 19.5.)  Thus, the Court will need to interpret this provision to determine the scope of the NFL's alleged duty to Plaintiff and whether the NFL acted reasonably.  For example, the Court will have to interpret what "provide a physician" means, including the physician's training and responsibilities during the game for treatment and diagnosis of injuries, and for return-to-play decisions.

Second, regarding Plaintiffs' allegation that the NFL "avoid[ed] changes in rule-playing to minimize head injury" (Compl. ¶ 323) and otherwise breached its duties relating to rule-making (*see* Compl. ¶¶ 85-86, 95), the Constitution tasks the NFL and its Clubs with "amend[ing] or chang[ing]" the NFL "[p]laying rules"; proposed rule changes voted on by the Clubs must first be presented to the NFL (*see* Ex. 2, 1968 Constitution Art. XI § 11.2).  Thus, because the CBA expressly addresses rule-making, and assigns responsibility for promulgating and revising rules to the Clubs, as well as to the NFL, the provisions of the CBA first must be interpreted to determine what rule-making duties, if any, may be imposed on the NFL, and to determine the scope of those duties.

A long line of NFL preemption cases has held that the resolution of player-injury claims substantially depends upon CBA terms addressing player health and safety, and confirms

that Plaintiffs' claims are preempted here.  In *Duerson*, the court held that resolution of

plaintiff's concussion-related negligence claim would require a court to interpret several of the

CBAs' provisions concerning player health and safety.  Because the "court could plausibly

interpret those provisions to impose a duty on the NFL's clubs to monitor a player's health and

fitness to continue to play football," such that the "NFL could then reasonably exercise a lower

standard of care in that area itself," the court concluded that the claims were preempted.  2012

WL 1658353, at *4.   In *Maxwell*, the court held that because the "CBA places primary

responsibility for identifying . . . physical conditions on the team physicians," the "physician

provisions of the CBA must be taken into account in determining the degree of care owed by the

NFL and how it relates to the NFL's alleged failure to establish guidelines or policies to protect

the mental health and safety of its players."  *Maxwell*, No. 11-CV-08394, Order at 1-2.  Also on

point is *Stringer* v. *National Football League*, which held that a wrongful death claim against the

NFL—premised on the NFL's alleged failure "to establish regulations" to ensure "adequate care

and monitoring of players suffering from heat-related illness" and "regulation of . . . return to

practice"—was preempted, because the CBA "places primary responsibility" for treating the

players' physical conditions on the team physicians, and the CBA provisions doing so "must,

therefore, be taken into account in determining the degree of care owed by the NFL and what

was reasonable under the circumstances."  *Stringer* v. *Nat'l Football League*, 474 F. Supp. 2d

894, 903-04, 910-11 (S.D. Ohio 2007).

   *Duerson*, *Maxwell*, and *Stringer* are all consistent with numerous other decisions

holding that NFL player claims against the NFL or its Clubs relating to duties that are imposed

by the CBAs are preempted, because they require interpretation of CBA terms.  *See*, *e.g.*, *Givens*

v. *Tenn. Football, Inc.*, 684 F. Supp. 2d 985, 990-91 (M.D. Tenn. 2010) ("The questions raised

by the Complaint, such as whether a physician's failure to advise a player of his medical condition should be imputed to the club or whether the club has a duty independent of the physician to advise a player of his medical condition, are 'inextricably intertwined' with the provisions of the CBA."); *Sherwin*, 752 F. Supp. at 1177-78 (former player's claims that the Club provided negligent medical treatment and fraudulently concealed the extent of the player's injury was preempted because the Club "did not owe a duty to provide medical care to the plaintiff independent of the relationship established in the" CBAs); *Jeffers* v. *D'Alessandro*, 681 S.E.2d 405, 412 (N.C. Ct. App. 2009) (former NFL player's claims against Club—that team physician performed unauthorized procedures during knee surgery—was preempted because resolution of the claim was substantially dependent upon an analysis of CBA provisions setting forth the Clubs' and players' rights and duties in connection with medical care); *see also Williams* v. *Nat'l Football League*, 582 F.3d 863, 881 (8th Cir. 2009) (negligence claim against the NFL preempted because "whether the NFL . . . owed the Players a duty to provide . . . a warning [that a supplement contained a banned substance under the NFL Drug Policy] cannot be determined without examining the parties' legal relationship and expectations as established by the CBA and the Policy"); *Atwater* v. *Nat'l Football League Players' Ass'n*, 626 F.3d 1170, 1182 (11th Cir. 2010) (former players' claims preempted because court "would . . . have to consult the CBA to determine the scope of the legal relationship between Plaintiffs and the NFL and their expectations based upon that relationship"); *Smith* v. *Houston Oilers, Inc.*, 87 F.3d 717, 719-21 (5th Cir. 1996) (players' claims for coercion, duress, extortion, and assault and battery preempted); *Holmes* v. *Nat'l Football League*, 939 F. Supp. 517, 527-28 (N.D. Tex. 1996) (player's claims for fraudulent inducement, intentional infliction of emotional distress, breach of implied covenant of good faith and fair dealing, and invasion of privacy preempted).

Although the provision in the 1968 Constitution regarding player health and safety differs from the provisions on player health and safety in the CBAs analyzed by the *Duerson*, *Maxwell*, *Stringer* and other courts, its substance is the same:  the 1968 Constitution, like the later CBAs, provides that the Clubs and their medical staff have the responsibility to provide medical care to NFL players.  *See* 1968 Constitution Art. XIX, § 19.5 (requiring that the home team provide a doctor and ambulance for each game); *see also* 1968 CBA Art. XI § 4 (establishing a duty of the Member Clubs to provide compensation for workplace injuries by requiring clubs in states where workers' compensation coverage is not compulsory to "either voluntarily obtain [workers' compensation] coverage under the compensation laws of that state or otherwise guarantee equivalent benefits to its players," thus affirming that duties regarding player health and safety, including the financial implications of workplace injuries, are assigned to the Clubs in the first instance).  In sum, as set forth in detail above, in resolving Plaintiffs' claims, the Court will need to interpret the terms of the 1968 CBA and Constitution to determine the scope of the NFL's alleged duty to Pyle and whether the NFL acted reasonably, because a court cannot evaluate the purported duties owed by the NFL, the scope of the NFL's purported duties, or whether the NFL acted reasonably without first considering these preexisting obligations regarding player health and safety.

Plaintiffs' cases are not to the contrary.  Both *Bentley* v. *Cleveland Browns Football Co.*, 958 N.E.2d 585 (Ohio Ct. App. 2011), and *Jurevicius* v. *Cleveland Browns Football Co.*, No. 09-cv-1803, 2010 WL 8461220 (N.D. Ohio Mar. 31, 2010), arose out of staph infections contracted by players at a rehabilitation facility run by the Browns.  *Bentley*, 958 N.E.2d at 587; *Jurevicius*, 2010 WL 8461220, at *2.  The *Jurevicius* court, upon which the *Bentley* court relied, held that plaintiff's claims were not preempted because the relevant CBA

14

provisions established a duty to disclose player medical conditions, not the safety conditions of team facilities.  2010 WL 8461220, at *12.  Here, Plaintiffs' claims are squarely based on a duty to disclose medical conditions.  (*See* Compl. ¶ 22 (the NFL "fail[ed] to disclose the true risks of repetitive sub-concussive and concussive impacts")); *see also Duerson*, 2012 WL 1658353, at *5 (distinguishing *Jurevicius* and *Bentley* because "[i]n this case, by contrast, Duerson's claims relate to a player's physical condition, and thus are affected by the CBA provisions").  Furthermore, Plaintiffs fail to note that the *Jurevicius* court held that claims for constructive fraud and breach of fiduciary duty were preempted, as those claims required interpretation of the CBA to determine the relationship of the parties.  *Jurevicius*, 2010 WL 8461220, at *15-16.  Equally inapposite are Plaintiffs' cases outside the football context, which stand simply for the unremarkable proposition that if the CBA is not implicated or if interpretation is not required, there is no preemption.[3]

### 2.    Resolution of Plaintiffs' Fraud-Based Claims Requires Interpretation of the Terms of the CBAs

Resolution of Plaintiffs' claims for fraud, fraudulent concealment, "civil conspiracy/fraudulent concealment," and declaratory relief also requires an interpretation of the terms of the CBA and Constitution.

First, because these claims are founded on the same alleged duty as Plaintiffs' negligence claims, the same analysis applies here.[4]  Plaintiffs thus allege that the NFL "had a

---

[3]   *See Wynn* v. *AC Rochester*, 273 F.3d 153, 159 (2d Cir. 2001); *Foy* v. *Pratt & Whitney Group*, 127 F.3d 229, 234-35 (2d Cir. 1997); *Trans Wax Corp.* v. *McCandless*, 50 F.3d 217, 230-31 (3d Cir. 1995); *Voilas* v. *Gen. Motors Corp.*, 170 F.3d 367, 378 (3d Cir. 1999).

[4]   An essential element of a fraudulent concealment claim is a duty to disclose.  *See Mandarin Trading Ltd.* v. *Wildenstein*, 16 N.Y.3d 173, 179 (N.Y. 2011); *Manti's Transp., Inc.* v. *C.T. Lines, Inc.*, 68 A.D.3d 937, 940 (N.Y. App. Div. 2009).  To the extent that Plaintiffs' claims for fraud, "civil conspiracy/fraudulent concealment," and declaratory relief are premised on fraudulent concealment, they, too, thus require a duty to disclose.

duty to advise Mike Pyle of the heightened risk" of "neurodegenerative disorders and diseases," which the NFL purportedly breached by "willfully and intentionally" misleading Plaintiffs and concealing the risk from Plaintiffs (Compl. ¶ 243(b)-(c)), in the same way that Plaintiffs allege that "the NFL was negligent and failed to carry out [its] duty in that it failed to inform NFL players of the risks associated with MTBI." (*Id.* ¶ 8.)  Because, as set forth above, a court cannot evaluate the scope of the NFL's purported duties without first considering the obligations regarding player health and safety imposed by the CBA and Constitution, resolution of these claims, too, substantially depends upon an interpretation of those terms.

Second, Plaintiffs' fraud-based claims (as well as the negligent misrepresentation claim) require a showing of justifiable reliance, and the Court cannot determine whether Plaintiffs justifiably relied on information provided or omitted by the NFL, as Plaintiffs allege, without interpreting the Constitution's medical care provision.  In adjudicating a fraud claim and assessing whether one party's reliance is justifiable, courts must "take[] a contextual view, focusing on . . . the relationship between [the parties.]"  *Thomas H. Lee Equity Fund V, L.P.* v. *Grant Thornton LLP*, 586 F. Supp. 2d 119, 133 (S.D.N.Y. 2008).  Thus, any analysis of Plaintiffs' purported reliance on alleged statements by the NFL necessarily depends on an interpretation of the Constitution's provision allocating to the Clubs' medical staff the responsibility for treating player injuries.  *See, e.g.*, *Williams*, 582 F.3d at 881 (players' fraud claim—that the NFL knew that a supplement contained a banned substance but failed to warn the players—was "preempted because the Players cannot demonstrate the requisite reasonable reliance . . . without resorting to the CBA," which tasked players with responsibility for knowing the contents of supplements); *see also Atwater*, 626 F.3d at 1183 (former players' negligent misrepresentation claim was preempted because "whether Plaintiffs reasonably relied on

16

Defendants' alleged misrepresentations is substantially dependent on the CBA's language"); *Sherwin*, 752 F. Supp. at 1178 (fraud claim against Member Club preempted because "the court cannot resolve plaintiff's fraud and negligent misrepresentation claims without reference to" provisions of the CBA establishing "the duty of a club physician, and arguably the club," to inform player of adverse physical conditions).

Plaintiffs' claim against NFLP for "Civil Conspiracy/Fraudulent Concealment" is preempted for the same reason that Plaintiffs' "Civil Conspiracy/Fraudulent Concealment" claim against the NFL is preempted:  its resolution, too, requires interpretation of the CBAs.  Plaintiffs allege no duty owed by NFLP, as opposed to a duty owed by the NFL; nor do Plaintiffs allege any breach of a duty by NFLP, as opposed to a purported breach by the NFL.  In fact, there are no factual substantive allegations in the Complaint specific to NFLP.  Instead, NFLP is solely (and conclusorily) alleged to be liable along with the NFL for acting "in concert to conceal from NFL players and the public the link between repetitive head impacts in football and long-term neuro-cognitive damage, illness, and decline."  (Compl. ¶ 351.)  Thus, to adjudicate the claim against NFLP (to the extent it even exists), a court will need first to assess the scope of any alleged duty on the part of NFLP—an assessment that must be measured according to the scope of the preexisting duties in the CBA.  *See supra*.[5]

The result is no different with respect to Plaintiffs' "post-retirement" fraudulent concealment, negligent misrepresentation, negligent hiring, and negligent retention allegations, which claim that the NFL's purported "concealment of the risks to which Plaintiff . . . had been

---

[5] That NFLP is not a signatory to the CBAs "is not dispositive" because the "relevant question for preemption purposes is . . . whether Plaintiffs' state-law claims . . . would require the court to apply or interpret the CBA." *Atwater*, 626 F.3d at 1177-78 (noting that "courts have governed their determinations on . . . preemption by the necessity of referring to a CBA for resolution of the claim rather than by the individual status of the defendant") (internal quotations omitted).

exposed delayed his ability . . . to seek appropriate treatment of [his] latent neurodegenerative conditions." (Compl. ¶ 272; *see also id.* at ¶ 304.)  Where the union and employer negotiate benefits for retirees, retirees can proceed under section 301 to enforce a provision in the collective bargaining agreement to provide them with retirement benefits.  *See Allied Chem. & Alkali Workers of Am., Local Union No. 1* v. *Pittsburgh Plate Glass Co.*, 404 U.S. 157, 181 n.20 (1971); *see also Schweizer Aircraft Corp.* v. *Local 1752, Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 29 F.3d 83, 87 (2d Cir. 1994) (recognizing that retirees could bring an action under section 301).  Correspondingly, the claims of retirees will be preempted if "the court will be required to interpret or apply the CBA to resolve the retirees' claims." *Atwater*, 626 F.3d at 1185.

That is precisely the case here, because Plaintiffs' fraudulent concealment, negligent misrepresentation, negligent hiring, and negligent retention claims hinge on the existence of a duty, and the assessment of any such duty on the part of the NFL requires an interpretation of the CBAs' numerous post-retirement benefits provisions, negotiated by the Union and the NFL, which benefits cover a wide range of subjects, including medical care and compensation for such medical care for eligible retirees, including, for example, in the case of "dementia." (*See* Ex. 4, 2006 CBA Art. XLVIII-D § 1 ("The parties agree to . . . establish a . . . plan . . . to provide medical benefits to former Players who are . . . determined . . . to have dementia."); *see also* Ex. 5, 2011 CBA Art. 58 § 1; Art. 65 § 1 ("[T]he Disability Plan will be amended to provide a benefit for those eligible Players, as defined below, who have permanent, neuro-cognitive impairment . . . .").)  Among other things, these provisions place responsibility on the players themselves for seeking medical care during retirement, while the NFL is tasked solely with paying the costs of certain such care for eligible retirees.  (*See id.*)  Thus, to resolve

Plaintiffs' claims, a court first must assess these provisions to determine whether the NFL had any duty to disclose, and, if so, the scope of that duty, and whether, as alleged, Michael Pyle "in fact did reasonably rely" on information provided by the NFL "after his NFL career" (Compl. ¶ 273), or whether the parties agreed that the players alone assumed such an obligation, such that their reliance on the NFL was unreasonable.  *See Atwater*, 626 F.3d at 1183 (former players' negligent misrepresentation claim—that the NFL provided inaccurate background information regarding investment advisors for the players—was preempted because "whether Plaintiffs reasonably relied on Defendants' alleged misrepresentations is substantially dependent on the CBA's language," which placed responsibility for player finances on players themselves).

### 3.    Plaintiffs' Claims Against the NFL Arise Under the CBAs

Plaintiffs' claims against the NFL also are preempted by section 301 because they are premised on rights and obligations that arise under the CBA.  *See Allis-Chalmers*, 471 U.S. at 213 ("state-law rights and obligations that do not exist independently of [collective bargaining] agreements" are preempted); *see also Salamea* v. *Macy's East, Inc.*, 426 F. Supp. 2d 149, 154 (S.D.N.Y. 2006) (finding employee's negligent termination claim to be preempted by section 301 where CBA was the only source of any duty of care owed by the employer).

The CBA defines the relationship among the NFL, its Clubs, and the players. (*See* Ex. 1, 1968 CBA Art. I § 2 (CBA "represent[] a complete full and final understanding of the parties on bargainable subjects."); Art. III § 1 (acknowledging the primacy of provisions of the NFL Constitution to the extent they do not conflict with the CBA).)  As the Complaint makes clear, Plaintiffs' claims allege that the NFL purportedly failed to implement "changes in rule-playing to minimize head injury" and failed to "impose safety regulations governing this health and safety problem."  (Compl. ¶¶ 9, 323.)  For example, Plaintiffs allege that the NFL should have adopted, earlier than it did, rules regarding "the employment of a neurologist on the

19

sidelines," and "return-to-play rules consistent with proper medical management of MTBI." (*Id.* ¶ 279.)  The Constitution, however, establishes the duties of the Clubs to provide medical care to NFL players.  (*See* Ex. 2, 1968 Constitution Art. XIX § 19.5.)  Similarly, the Constitution establishes the duty of the NFL and its Clubs to implement and enforce rules regarding professional football generally.  Indeed, the Constitution provides that the NFL and its Clubs have the obligation to "amend[] or change[]" the NFL "[p]laying rules."  (*See* Ex. 2, 1968 Constitution Art. XI, § 11.2.)  Thus, the NFL's alleged duty—to "make the game of professional football safer for players"—expressly arises under the CBA.  (Compl. ¶ 85.)

That this purported obligation arises under the CBA and Constitution is confirmed by the fact that the duty does not exist independent of the CBA:  The NFL does not owe duties to promulgate rules regarding player health and safety to "every person in society."  *See Rawson*, 495 U.S. at 371 (holding a state law right only arises outside of a CBA where defendant is "accused of acting in a way that might violate the duty of reasonable care owed to every person in society"); *Brown* v. *Nat'l Football League*, 219 F. Supp. 2d 372, 380 (S.D.N.Y. 2002) ("To be independent of the CBA, a tort claim must allege a violation of a duty 'owed to every person in society' as opposed to a duty owed only to employees covered by the collective bargaining agreement" (quoting *Rawson*, 495 U.S. at 368)); *Sherwin*, 752 F. Supp. at 1178 (finding fraud claim arose under CBA because "[t]he Colts owed a duty to . . . provide truthful information regarding medical treatment . . . only to their players covered by the standard player agreement and the CBA," not "to every person in society" (quoting *Rawson*, 495 U.S. at 371)); *but see Stringer*, 474 F. Supp. 2d at 908 (suggesting *Brown*'s reading of *Rawson* is "too broad" and holding that plaintiff's claims did not arise under the CBAs).

Accordingly, Plaintiffs' claims—which are premised on alleged duties owed to NFL players only—arise under the CBA and Constitution and consequently are preempted by section 301.  *See Allis-Chalmers*, 471 U.S. at 213.

None of Plaintiffs' cases compels a different result.  Unlike here, *Brown* arose out of purported tortious conduct that was unrelated to Plaintiff's status a NFL player.  In *Brown*, a player was hit in the eye by a flag thrown by a referee.  219 F. Supp. 2d at 375.  The act of throwing dangerous objects—held to create independent duties to the general public—are not implicated by Plaintiffs' claims here that the NFL Defendants failed to establish adequately safe playing rules and regulations.  (*See* Compl. ¶¶ 5-6 (alleging that the NFL had a "duty to provide players with rules and information that protect them as much as possible from [the] short-term and long-term health risks" of "sub-concussive and concussive injuries in football")).  Similarly, in *Hendy* v. *Losse*, No. 89-55430, 1991 U.S. App. LEXIS 2141 (9th Cir. Feb. 12, 1991), an unreported case of no precedential value under Ninth Circuit law, the court held that plaintiff's negligent hiring claim against the Club was not preempted because the claim "does not depend . . . on [Hendy's] status [as a football player] . . . .  The identical claim could be asserted by anyone Dr. Losse treated in connection with his employment."  *Id.* at *6.  Here, Pyle's status as a football players is central to Plaintiffs' claims.  (*See, e.g.*, Compl. ¶ 9.)

## B.      The 1968 Constitution Is Incorporated Into the CBA

In an attempt to avoid preemption, Plaintiffs urge the Court to disregard the applicable provisions in the 1968 Constitution because "there is no language in the 1968 [CBA] that adopts or incorporates the Constitution and Bylaws."  (Pls. Br. at 11.)  But the test is not whether the CBA used the terms "incorporate by reference," as "[i]t is not necessary, in order to incorporate by reference the terms of another document, that such purpose be stated in *haec verba* or that any particular language be used." *Levy* v. *Verizon Info. Servs.*, 498 F. Supp. 2d 586,

594-95 & n.6 (E.D.N.Y. 2007) (holding that an incentive compensation plan was incorporated into a collective bargaining agreement by language in the CBA stating that the sales plan "will apply to sales representatives in each job title") (internal quotation omitted). Moreover, it is well settled that a document incorporated into a collective bargaining agreement, like the collective bargaining agreement itself, can form the basis for preemption. *See, e.g.*, *Allis-Chalmers Corp.*, 471 U.S. at 204 (analyzing preemption in the context of the collective bargaining agreement and its incorporated documents); *Levy*, 498 F. Supp. 2d at 597-98 (finding plaintiffs' claims preempted because in order to resolve them, "the court would necessarily have to analyze § C.7 of the Encompass Plan that is incorporated in the CBA"); *Johnson* v. *NBC Universal, Inc.*, No. 08-cv-03780, 2009 WL 151673, at *4 (D.N.J. Jan. 22, 2009) ("A state law claim is preempted when the claim is 'substantially dependent' upon the interpretation of a collective bargaining agreement including all incorporated sub-agreements.").

Here, as part of the collective bargaining process, the Union—representing the players—and the NFL agreed to abide by the provisions of the 1968 Constitution, as the 1968 CBA expressly provides that "[t]he provisions of the Constitution . . . shall remain in full force and effect," excepting only those that conflict with other provisions of the CBA. (Ex. 1, 1968 CBA Art. III, § 1.) As the Second Circuit has held in connection with a similar provision of the 1993 CBA, "[i]n the [CBA], the union agreed to waive any challenge to the Constitution and Bylaws and thereby acquiesced in the continuing operation of the . . . rules contained therein . . . ." *Clarett* v. *Nat'l Football League*, 369 F.3d 124, 142 (2d Cir. 2004). No more is required to incorporate the provisions of the Constitution into the CBA. *See Brown*, 219 F. Supp. 2d at 386 ("[T]he Constitution was bargained over and included within the scope of the CBA."); *see also Levy*, 594-95 & n.6. Thus, Plaintiffs' claims are preempted to the extent that their resolution

substantially depends upon an interpretation of the terms of the Constitution's provisions, or arises under the Constitution.

Seeking to escape this precedent, Plaintiffs argue that the language in the 1993 CBA analyzed by the *Clarett* court is "very different" from the applicable provision before this Court. (Pls. Br. at 11 n.1.)  That the provisions differ, however, is irrelevant.  Both provisions make clear the parties' intent that the provisions of the Constitutions in question would be incorporated as part of their agreement.  *Compare Clarett*, 369 F.3d at 127 ("[T]he NFLPA and the [NFL] the Management Council waive any rights to bargain with one another concerning any subject covered or not covered in this Agreement for the duration of this Agreement, *including the provisions of the NFL Constitution and Bylaws*.") (quoting 1993 CBA Art. III, § 1 (emphasis added)) *with* Ex. 1, 1968 CBA Art. III, § 1 ("The provisions of the Constitution . . . shall remain in full force and effect . . . .  However, to the extent that [the Constitution is] inconsistent with . . . . this Agreement, the provisions of this Agreement shall govern."); *see also* Ex. 3 (1993 CBA). Because, as described above, resolution of Plaintiffs' claims would require the Court to interpret the 1968 Constitution's provision regarding player health and safety and Plaintiffs' claims regarding rule making arise out of the Constitution's provisions governing that subject, Plaintiffs' claims are preempted.

## II.

## <u>PLAINTIFFS' REQUESTS FOR DISCOVERY SHOULD BE DENIED</u>

Plaintiffs' various requests for discovery "in aid of remand" and for preservation of discovery also should be denied.

Regarding Plaintiffs' requests for discovery "in aid of remand," Plaintiffs are not entitled to wide-ranging discovery purportedly related to the NFL Defendants' labor preemption arguments because the Complaint and the CBAs are the only documents that the Court need

analyze in order to determine whether Plaintiffs' claims are preempted.  *See, e.g.*, *Levy*, 498 F.

Supp. 2d at 595 n.8 (E.D.N.Y. 2007) (granting motion to dismiss where claims were preempted,

rejecting plaintiffs' contention "that they would need additional discovery to litigate" the issue,

and noting that the question of whether plaintiffs' claims were preempted presented a pure issue

of law requiring no discovery).  Indeed, both the *Duerson* and *Maxwell* courts, without the aid of

discovery, adjudicated motions to remand complaints containing substantially similar allegations

brought by former NFL players, determining that plaintiffs' concussion-related negligence

claims were preempted.  *See Duerson*, 2012 WL 1658353, at *6; *Maxwell*, No. 11-cv-08394,

Order at 2.  Because the NFL Defendant's Notice of Removal identifies the relevant provisions

of the 1968 CBA and 1968 Constitution, and the documents themselves are attached to the

Declaration of Dennis Curran accompanying this Opposition, no discovery is necessary.[6]  (*See*

Defs.' Removal Notice ¶ 11; Exs. 1 & 2.)

Regarding Plaintiffs' request for "preservation discovery," Plaintiffs cannot

dispute that this Court has jurisdiction to hear this case at all, while simultaneously asking the

Court to take the extraordinary action of ordering expedited discovery.   Such a request is not

appropriate; indeed, given the jurisdictional question, discovery should be stayed.  *See Major,*

*Lindsey & Africa, LLC*  v. *Mahn*, No. 10 Civ. 4239, 2010 U.S. Dist. LEXIS 94033, *18-19

(S.D.N.Y. Sept. 7, 2010) (staying all discovery until the court addressed defendant's motion to

dismiss the RICO claim "because if that claim were dismissed, this Court would lack jurisdiction

---

[6]   Co-lead counsel for plaintiffs in the MDL proceedings had initially sought this same discovery in the MDL in connection with the NFL Defendants' motion to dismiss the Amended Master Administrative Complaint on preemption grounds.  Although the MDL transferee court noted that its "inclination is that the NFL is correct, that you don't need this information" (Burns Decl. Ex. 1, Tr. of Apr. 25, 2012, *In re: National Football League Players' Concussion Injury Litigation*, 12- MDL-2323, Organizational Courtroom Conference, at 28:14-16), the transferee court nevertheless provided plaintiffs, including those represented by Plaintiffs' counsel here, an opportunity to file specific requests for discovery in connection with the preemption arguments by June 19, 2012.  (*See In re: National Football League Players' Concussion Injury Litigation*, 12-MDL-2323, Case Management Order No. 2 at 3, Apr. 26, 2012, ECF Dkt. 64.)  No such requests were submitted.

over this matter"); *Maldonado* v. *Pataki*, No. 05-CV-5158, 2005 U.S. Dist. LEXIS 36924, *6 (E.D.N.Y. Dec. 7, 2005) (finding that "particularly in light of the jurisdictional questions identified above" there was "no substantial injury to the plaintiffs in the absence of expedited discovery"); *see also Yurman Designs, Inc.* v. *A.R. Morris Jewelers, LLC*, 41 F. Supp. 2d 453, 460-61 (S.D.N.Y. 1999) (denying as moot plaintiff's motion for expedited discovery because the court found it did not have jurisdiction over the matter).  Plaintiffs' request can thus be addressed by the transferee court—which is addressing similar issues—if Plaintiffs' motion to remand is denied, or, if Plaintiffs are successful, by the state court.

Accordingly, the Court should deny Plaintiffs' requests.

## CONCLUSION

For the reasons set forth above, the NFL Defendants respectfully submit that Plaintiffs' motion to remand, for preservation of discovery, and for discovery in aid of remand should be denied.

Dated: September 17, 2012

Respectfully submitted,

PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP

By: */s/ Brad S. Karp*
    Brad S. Karp (bkarp@paulweiss.com)
    Theodore V. Wells, Jr. (twells@paulweiss.com)
    Beth A. Wilkinson (bwilkinson@paulweiss.com)
    Lynn B. Bayard (lbayard@paulweiss.com)

1285 Avenue of the Americas
New York, New York  10019-6064
Tel.  (212) 373-3000
Fax  (212) 757-3990

*Attorneys for the NFL Defendants*